Your argument is 23-2312, Fintiv, Inc. v. PayPal. Ms. Addy, whenever you're ready. Good morning. Please proceed. Good morning, Your Honors. This claim construction case where the court improperly applied 112-6 to a limitation that does not include the term means, is bound with structure, and for which PayPal did not overcome the presumption, requires reversal. However, even if 112-6 is applied, the court also ignored the structure found in the claims and the specification, and for that reason as well, the case should be reversed. So talk to us about, you start off by saying, well, we've established, and I don't think you dispute, that you don't need the word means. There might be a presumption, but that doesn't get you to where you need to go. So your second point was, it is bound by structure. Can you tell me what that means when you look at the words of the claim? Yes, Your Honor. The claim is a payment handler that exposes a common OPI for interacting with different payment processors, and even looking at this claim term through a lens of means plus function, the function would occur after the for, and that would be interacting with different payment processors. Hence, looking at the language before the for, as a whole, which you have to do, payment handler that exposes a common API, and that contains definite structure, it cannot be substituted with the term means. Your Honor, 112-6 requires that the claim, if it's in means plus function form, has to be devoid of, quote, the recital of structure, material, or acts, and the claim has structure. And I think this comes from the red brief, but in the 386 patent, the claim says the payment handler service operable to use APIs, and 413, it says payment handler configured to use IPIs, and then the 196, which is the one I think you referred to, a payment handler that exposes. Isn't, aren't those phrases fairly construed as being entirely functional? Your Honor, I think that's incorrect for two reasons. I'll start with the 488 and the 196, which is the one I just quoted before, and then I'll go back to the other two. Can I just, I don't remember, did you, either in this court or below, argue that there was a difference among these several claims with respect to what constitutes the function? We argued that, because here I think you're putting the, that exposes APIs on the, before you get to function side of the line, some of the other language doesn't, isn't amenable quite to that point, where the API reference is clearly on the for side, and I don't remember whether you're making a distinction among these claims. We didn't make a big distinction because we said that you could have interacting with different payment processors as the functional language, or you could have operable to use different payment processors, and the way we get to that is if you look at the 386 claim, the limitation is payment handler service, operable to use, APIs of different payment processors, including one or more APIs of banks, credit, and debit card processors, and bill payment processors. That's a lot of structure, and so we were trying to make these claim limitations consistent, and we said, all right, operable to interact with different payment processors, at least that is what, in general terms, we're getting at, but when you're looking at this claim 386 claim one, there's really no functional language there that would support means plus function because there's no for, number one, and number two, operable to use APIs of different payment processors includes all kinds of function. It describes that function as banks and credit cards, and that structure, I'm sorry, Your Honor, as banks and credit cards and processors. Why isn't that functional? It is functional, but it's not functional in the way that the statute defines means plus function, and in fact, Your Honor, it's entirely appropriate for the structure that satisfies a means plus function to be functional. In fact, in the Apex court, the Apex case, you said that the fact that the court, the fact that a particular claim term may be defined in functional terms is not sufficient to convert the term into a means for performing. And such is the case here where the parties don't dispute that API discloses structure. There's no dispute there on the parties. It was known, and both experts agree. Also, there are several cases from this court that say that API discloses structure. So at least, going back to your first question, at least under the payment handler that exposes a common API, all of that is structure because the parties agree that a common API is structure. And once you get all that structure, you are forbidden to use means plus function. So you said the parties agree to what? They agree that an API converts structure. An API is a known application interface. So agreeing that there's sufficient structure for API is not an agreement that there's structure for payment handler, correct? Correct. But you can't excise certain claim terms out of the claim limitation and look at them in a vacuum. But you acknowledge you also need structure for payment handler. Do you know that? I believe we do have structure for payment handler. And you need to, correct? I don't know that I want to go as far and say as we need to because I think once you have any structure in the language that would be substituted for means under the statute, I think that kicks you out of means. But we absolutely do have structure for handler, Your Honor, too. And the court, in order to reach this means plus function conclusion, it had to excise this term handler out of the claim as a whole and look at it as a vacuum, which is improper under Dyson. However, looking at handler in a vacuum, it still discloses sufficient structure to overcome 112.6 because, for example, PayPal's own dictionaries show that the structure of handler alone was known to want to steal in the art. Those dictionaries are repeated in our blue brief at 22, but just looking at one of them, for example, they cite the dictionary of computing for handler. And in that dictionary, it says a handler is a part of an operating system software or special software routine which controls a device or function. The example they give is a scanner handler. So a scanner handler or a handler is something that at least these dictionaries show, one of where it may steal in the art recognized as a term in the industry and not something that's made with functional like means. I just want to be less clear where accepting your statement is correct gets you to where you need to go. Is there any evidence in this record that any of the handlers in the prior art performed this claim function? Isn't that the right question we should ask? No, Your Honor, I don't think that's quite the right question. I think you have to say, okay, is this payment handler something that was known in the art? And oh, but to answer your question, I think I can answer your question in the positive. Yes, Your Honor. PayPal also cited the IOTP standard. And the court strangely disregarded the IOTP standard. But that standard shows that one of scale would understand that a payment handler, what a payment handler is. And the district court recognized that the IOTP standard referred to many different entities in the payment system with different structures. But he said that wasn't enough. But that's not the law. In Dyson, if you're referring to a class of structures, as the IOTP standard is here, that is enough to connote that one of Orne's filming art would understand what a payment handler is. By Dyson, do you mean DyFan? I'm sorry, DyFan. Can I ask you, because the red brief suggests that you're trying to get us to expand DyFan so far that it would, in their words, eviscerate 112.6 by allowing any genetic reference to software code to supply sufficient structure for performing a function. Isn't that what you're inviting us to do here? No, Your Honor. No, Your Honor, because as the parties agree, both the ATP or the API is, the API is known structure. So there's structure in the claim before the four on the mean side. And because the handler, the payment handler is known structure, because even though they dispute it, they put in a dictionary and they put in a standard, both of those things show that one of still in the art would know absolutely what a payment handler is. In fact, the standard references payment handler over 180 times. The DyFan... Can I just... Yes. Is the handler definition, does it define handler as a software routine or a piece of hardware? Here, in this context, handler is a software routine, Your Honor. And have we said that, you know, some expression like a software routine is or is not 106 triggering? Yes, we have, Your Honor. I think in the, I believe it's the Apex case, but I need to take a quick look. Well then, in DyFan case, we also said that code or configure to does not automatically invoke 112.6 when there's a known class of structure. So I go back to DyFan to say that here, as shown in standard, there's a known class of structures and those structures would satisfy this court's DyFan definition. In DyFan, there was, as I recall, unrebutted expert testimony that a person skilled in the art would have understood the terms as a particular structure and the availability of off-the-shelf code to perform the recited functions. There was no such unrebutted testimony here, correct? Your Honor, that's right. Dr. Chatterjee did say that one would not, one of skill would not know what a payment handler was. However, there was the other evidence and, of course, our expert said that one of skill in the art would know and you have to consider this claim term in the context of the rest of the claim. So, in the rest of the claim language. So, number one... By the way, did you suggest in the district court or here that what you just summarized, which might be characterized as a factual dispute, is not for the district judge to resolve? I'm sorry, can you... You just said Dr. Chatterjee said one thing, your expert said the other thing. So, I think, oh, factual dispute. And now, I want to know who is supposed to decide that and what did you argue about who is supposed to decide that? So, to answer your second question first, we focused our arguments on the fact that this was not a 112-6. And I'm not sure that we reached the question of who would decide whether that's a fact. It feels like that portion of claim construction that is, while factual, nevertheless, not for the jury, but for the judge as fact finder. So, I thought that was an interesting question as well, because when you get down to... When you get down to written description, rather than claim construction. So, if you're in claim construction, I can see, yes, it's a legal question with underlying factual disputes. And when you get into written description, then we're dealing with a higher burden to prove invalidity. And it seems to me that it could also be a summary judgment decision. And if they're disputing experts at that point, I'm not sure that that is appropriate to resolve in summary judgment on an invalidity type of analysis, not a claim construction analysis. But... Here, you've not argued that this question should have gone to a jury. No. Can I just follow up? Judge Serrano's, I think, very first question to you was essentially, as I understand it, do we have one claim construction dispute in front of us or do we have possibly two, three, or four? You can see it's just one dispute. All these claims rise or fall together on this record? I think they do rise or fall together, but I feel like I didn't answer Judge Post's question on the facts, which is, yes, the DAEFAN had undisputed expert facts. But here, we have our expert, their dictionary, the IOTP standard, and the only outlier is their expert. So, to answer your question, I want to also just take a look real quickly, and I'm in my unknown in my rebuttal. The 386 actually, I think, recovers this, so I'll reserve the rest of my time. And thank you. Thank you. Good morning. Good morning, Your Honor. May it please the Court? Before I get into the actual evidence that the district court relied on, and the extrinsic evidence from PayPal's expert that's reviewed for clear error, I did want to take a step back and look at all of FinTIV's purported structures. I've heard FinTIV's counsel say that these terms are bound by structure, and there's simply a complete lack of evidence supporting any of FinTIV's attempts to articulate the structure. Now, just in the briefing before this Court, there are four different types of structures that FinTIV argues. At the opening brief in page 24, they say it's part of an operating system or specialized software routines which controls a device or function. Then four pages later, they say it's a narrower construct based in specific structures such as API and code wrapping for such APIs. Then one page later, in the opening brief at page 29, they say the IOTP protocols define the term payment handler as a physical entity, which obviously doesn't convey any specific structure. And then they clarify in their reply that the physical entity has certain structures such as an HTTP server, and that's at their reply at page 17. I just want to interrupt. So I guess I'm a little bit sympathetic to the displayed effort to try to figure out how to think about this claim language or the various versions of the claim language at issue where there is an assertion that not a single word like device or module is a nonce word, but a two-word phrase which has a kind of functional term inside it, but your contention is not that this is handler for payment. Your contention is that payment handler as a two-word expression is a 112.6 triggering word-like means. And I guess one of my questions is, can you point to precedent where we have applied 112.6 where it wasn't a single term but a two-word phrase that was being asserted to be the nonce expression? I believe the closest thing that comes to mind might be media rights with the copyright compliance mechanism where they looked at... Obviously they looked at mechanism as a nonce phrase, but then they looked at copyright compliance and if it added anything to that mechanism, and they said that this was purely a functional term. But it talks about what the mechanism does but not how it does it, and that's the one that comes to mind to answer your question, Your Honor. Okay. I guess it seems like there's a potential here for significantly expanding the reach of 112.6 in the computer field by looking at a phrase that would not strike an ordinary reader as a pure placeholder word. And now, if not two words, maybe three, four, maybe a whole phrase is now going to be analyzed under 112.6. Your Honor, I don't think there's a risk of that. What Dr. Chatterjee looked at, a PayPals expert, was whether the term payment handler connotes a structure to a person's ordinary skill. And to do that, he looked at definitions for the term handler. He found that was just basically any kind of software. And then he looked at whether the term payment added anything to it. Well, not any kind of software. I mean, the definition is any kind of software that controls something else. Right, a device or a specific function, right? And so that really mirrors the language. Your argument has not been that handler is a nonce word, payment is a function. The function, as you... And I assume your argument is not that, because you probably can't find specification structure for payment. You should... In these patents, in particular, there are five lines of specification that talk about the payment handler, and they mirror the claims. And so, respectfully, Judge, I don't think there is anything in the specification that talks about the different payment methods. But as amended, you have not made your 112-6 argument in the form handler is a nonce word, the function is payment, maybe it's payment plus other things, but you haven't put payment as a function and then looked for specification structure to perform the payment. The functions that we looked at were the ones that were recited in the claim, and as Judge Prost mentioned, there were two separate sets of functions. There's the 386-413, which is to use APIs of different payment processors, and then the other exposes it. And so those are the functions that we looked at. Now, FinCET is looking to kind of change the function to kind of unify these two sets of claims. And, again, that's put specifically prohibited under Lockheed Martin. Their space systems were L324, F3D 1308, F1319. The means-based function claim must be construed to include the limitations contained in the claim language. And so I'm not sure if that answers your question, but we were looking specifically... Dr. Chatterjee looked at whether payment added anything to the term handler. Handler is just a generic kind of software that controls a device or function, very similar to the language in Williamson, where the module was a generic description of hardware or software that performs a specified function. And so Dr. Chatterjee's opinion was that payment doesn't add anything, and that there was no structure tied to the two claimed functions resided in the two sets of claims. But is that really the right way to go about this analysis? The challenge term, as I understand it, is payment handler. Correct. So I'm concerned about, and I think the district court did the same thing, looking at handler and deciding, is that simply just a nonce word, essentially? And then asking separately, does payment change things? Shouldn't the analysis be, let's look at payment handler, what would one of skill in the art know about payment handler? Perhaps it's a term for a class of structures, perhaps it isn't. So shouldn't that have been the right form of analysis? I believe both the experts did look at the term payment handler in totality, as well as into its constituent parts. Dr. Chatterjee looked at the term payment handler, so that this does not connote structure to a person of ordinary skill. And he looked at the specification and gave concrete reasons why, specifically that he doesn't know from these two different sets of claims to which entity the common API is exposed. Then Mr. Johnson, Finto's expert, they looked for definitions for payment handler within the prior art and within the extrinsic evidence. And they came up with the single reference, the RFC, that was a supplement to the IOTP specification. And the only thing he could say is circularly, this document uses the term payment handler, and they didn't define it. So it must be so well known that it has a definition. And that was the extent of his opinion. And so these parties did look at the term payment handler as a whole, and they came up with nothing. There was no evidence, either in the intrinsic record or the extrinsic record, that supports that there is any type of known structure. Is it your view, then, that the law allows either of those two analytical approaches, either look at payment handler as its own singular term, or alternatively break it down into payment and handler? I'm hearing you say your expert did both. I suppose you'd say the district court did both. Are both proper analyses under the law? I believe they're either both. Each one of these cases, as this court said in WSOU 1, the 2023 Westlaw 621-607 Act 5, all of these cases have a determination on whether 112.6 applies as contextually dependent on the patents and claims at issue. And so you might have... I'm not sure that there's a case that I'm aware that places one test over the other, but both tests are accepted methods of determining whether 112.6 applies. Can you remind me, what is your position on the IOTP 1.0 definition of payment handler, Appendix 2829, payment handler, the entity that physically receives the payment from the consumer on behalf of the merchant? Right, and so the IOTP is an internet trading specification, and it defines different functional roles. And so these trading roles, that's at 28... I'm sorry, Appendix 2828. You have the consumer, merchant, payment handler, delivery handler, and customer care provider. And these are the functional roles that are in this protocol. And an individual can, or an individual organization can take on multiple different roles. So again, these are functional roles. They're not actual specific devices or structures. The IOTP does say that they can be represented by HTTP servers, which is completely untethered from the structure that FinTech now advances with their quote-unquote API structure. And so when we looked at this, our expert also took a look at what the payment processor does, or the payment handler does in the IOTP, and it's a payment processor. It's what handles, you know, do you have Visa, do you have MasterCard? It's the entity that physically accepts payment from the consumer. And so this is supportive of the idea that payment handler doesn't have a well-accepted meaning. It's referring in the IOTP to a completely different entity in the FinTech system. The district court didn't find any waiver of the positions that are being argued here, and you're not asking us to find that. Is that right? Well, there were positions that were raised for the first time on the PO, so the district court wasn't able to assess that at all. Okay, maybe I need to break it down. There were some positions that were raised only after claim construction in a motion for reconsideration. Is that right? Correct. Are you arguing that those are untimely and we shouldn't even reach them? I think the waiver issues on those is less important than those two-step algorithm that's raised in these briefs alone, and we do believe those are waived. If you look at FinTech's reply brief, where they discuss waiver, they never actually address this two-step algorithm at all. So the two-step algorithm, you say, is new to us and wasn't presented at any point to the district court. Correct. And, Your Honor, with my remaining time, I'd like to talk about the DIFM case that FinTech relies on so heavily. Now, as you pointed out, the difference in DIFM was the unrebutted expert testimony that the term application would be commonly understood to mean a computer program to provide some service to some user and that developers at the relevant time could have selected off-the-shelf software to perform services and functions. And so there's no evidence like that in this record with respect to the payment handler term. There's no off-the-shelf or conventional software. And this court made sure to articulate the same two judges, judges Lurie and Stahl, in WSOU2, that's 2023 Westlaw 653-1525 Act 5, that this distinction is significant and, in fact, critical. There, they said they were looking at the term processor and they said that, I'm sorry, yes, they were looking, they say, looking beyond processor as a bare term is precisely what the district court did here, but there was no conventional code, like in DIFM and ZeroClick, that could be identified as constituting a collaborative application management processor and no expert testimony, like in DIFM, supporting a structural understanding of processor in the context of the claim. And so, really, there's nothing in this record that would allow you to invoke the DIFM or compel the same result as in DIFM. The record is completely devoid of testimony that there is off-the-shelf or conventional payment handler software, much less any that uses APIs of different banks or payment processors or exposes a common API. Your expert gave certain opinions about figures 20 to 22, I forget which specific patent they were referring to, but providing evidence of structure, and they suggest your expert did not respond to that. If your expert did respond, could you tell me where I would find that? The, Dr. Chatterjee did not address those figures. None of those figures, however, even mention an API at all. They show data flows between various components of the system. One component, the business process services, talks to the payment handler, but there's absolutely nothing about using APIs of different banks or exposing a common API. And under eGeneric, the idea is not that, or the test is not that there's some structure at all. The structure must be linked and sufficient to show the claimed function, and we don't believe that expert testimony was necessary to address those data flows. Is it your view that that structure and those figures goes to APIs, but not to the use of APIs with a payment handler? There's nothing in those figures that mentions APIs at all, so I don't think either. And the figures just show, am I looking at the right figures, 84 and 85 of the appendix, where it just shows where the payment handler is? Figures 21 and 22A, 21I and 22A. Those are data flow diagrams, and so they're really just showing what is talking to the payment handler, and, you know, that's about it. That business processes services sends commands to the payment handler without any discussion of, you know, how the payment handler works or APIs. Thank you. Thank you, Your Honor. We'll restore two minutes. Thank you. I think I have three rebuttal or four rebuttal points that'll be quick. First of all, counsel started his argument by talking about the different structure that we provided in the, in our brief, and trying to say that that was somehow wrong. But there's a difference between providing evidence of structure that pulls the claim out of a means plus function term because it's known in the art what it is, and that's what we're providing in our brief, and defining the structure under a means plus function rubric. So, based on that, I believe you asked, counsel said that we had waived our definition of structure using the algorithm, which is part of what we argue on appeal. And I just wanted to point out that we didn't waive that. In fact, we argued the algorithm previously in our claim construction brief at Appendix 2483. While, again, we focused that this is not means plus function, we said if it is means plus function, it could be an algorithm. And we also cited to the specific specification area that we cite to support the structure in our means plus function analysis here. Finally, you raised the question, Judge Stark, on the figures, and I would direct you to Figure 20C, for example, at Appendix 71. Figure 20C shows the process flows, for example, for a deposit transaction, and because of the structure, if you define it structurally so that it's not in means, or if you define it in means so that you pull the structure from the spec, because the payment handler wraps, which translates APIs from various external payment processors, and because the payment handler exposes a common API to the monetary transaction system, those are the two-step algorithm. That allows the payment transaction system to do what's shown in Figure 20C, which is to hold funds from an agent balance and to load funds from a subscriber account. This case, Your Honor, is like Apple v. Motorola, where the claim language Is there any reference to APIs in Figure 20C? Not in Figure 20C, but the API would be software that is in the payment handler. So, this is like Apple v. Motorola, where the claim language and the specification disclose the handler's operations within the context of the invention, including inputs, outputs, and how certain outputs are achieved. This case should be reviewed first. It's not 112.6, and even if it is, there's sufficient structure in the spec such that it does not fill written description. Thank you, Your Honors. Thank you. We thank both sides, and the case is submitted.